CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 14 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| WILLIAM THOMAS REDD,<br>    Plaintiff, | Civil Action No. 7:07-cv-00204 |
| v. | |
| MEDICAL STAFF, et al.,<br>    Defendants. | By: Hon. Michael F. Urbanski<br>     United States Magistrate Judge |

## MEMORANDUM OPINION

Plaintiff William Thomas Redd ("Redd"), an inmate proceeding pro se, filed this action pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Redd alleges that he was denied adequate medical treatment by Dr. Thompson Berdeen ("Dr. Berdeen"), Sergeant Jean Trump ("Trump"), and Deputy William Linkous ("Linkous") (collectively, "defendants") while housed at Montgomery County Jail ("Jail"). By order entered August 13, 2007, this matter was transferred to the undersigned for disposition, pursuant to 28 U.S.C. § 636 (c)(1).

This matter is before the court on defendants' motion for summary judgment. The court notified Redd of defendants' motion as required by Roseboro v. Garrison, 528 F.3d 309 (4th Cir. 1975), and advised him that his failure to reply to defendants' motion may result in dismissal and/or summary judgment being granted for defendants. This matter is ripe for disposition as Redd filed a response to the defendants' motion and the time allotted for any further response has expired.

Upon review of the record, the court finds that Redd has not presented any genuine issue of material fact and that defendants are entitled to judgment as a matter of law. When considering the evidence in its entirety, and in the light most favorable to Redd, there is no indication in the record that defendants were deliberately indifferent to a serious medical need.

Redd always received medical treatment when he requested it and, at best, his claim is a dispute over his course of treatment. Accordingly, defendants' motion for summary judgment is granted.

## I.

Redd alleges that he was transferred from the New River Regional Jail to the Montgomery County Jail on January 10, 2007. Upon arrival at the Jail, Redd submitted to an initial medical screening performed by Linkous. Redd alleges that during this initial screening he informed Linkous that he suffered from headaches, blurry vision, and dizziness. Redd further alleges that he showed Linkous a cyst on his gums and that Linkous declared the condition to be pre-existing and did not warrant an emergency room visit. Redd claims that he filed a grievance in relation to this initial medical screening on January 12, 2007 and received no response. Redd has not provided this grievance form to the court.

Redd visited jail physician, Dr. Thompson Berdeen ("Dr. Berdeen"), on January 23, 2007 and March 2, 2007. Redd alleges that he showed Dr. Berdeen the cyst and complained of headaches, blurry vision, and dizziness on both occasions. Redd further alleges that following the initial examination, Dr. Berdeen told him that he did not have a brain tumor and that he owed $10.00 for the visit. Redd alleges that on the second visit, Dr. Berdeen indicated that he was not sure whether the cyst was life-threatening, that Redd would have to have surgery on the cyst, and that Redd could see an Ear, Nose, and Throat doctor when Redd was transferred to prison.

Redd also visited Sergeant Jean Trump ("Trump") on February 27, 2007. Redd alleges that he complained of headaches, blurry vision, pressure on his eardrums, and the cyst during this visit. Redd states that he squeezed the cyst and blood and green liquid oozed out of it. Trump

placed him on prescription K-Flex with directions to take it three times a day for seven days. Redd contends that Trump is not able to prescribe medication as she is not a medical doctor. Redd also states that Trump offered to set up an appointment with an Ear, Nose, and Throat doctor if Redd could pay the $215.00 doctor's fee, which he could not afford.

Redd filed a grievance regarding the administration of his prescription K-Flex on March 12, 2007. Redd's grievance alleges that Linkous took him off of the medication before he completed the seven-day cycle. The response to the grievance, however, indicates that the jail physician discontinued the prescription on March 2, 2007. Redd's complaint also alleges that Dr. Berdeen, and not Deputy Linkous, discontinued the medication.[1]

Redd also alleges that he passed out on March 9, 2007 for reasons unknown to him. Redd went to see Linkous after this event, despite the fact that Linkous advised him against the visit. Linkous took Redd's blood pressure and temperature during this visit and charged him $5.00 for a sick call. Redd filed a grievance in this matter on March 12, 2007 and received a response from the Jail on March 22, 2007. In his grievance, Redd complained about being charged $5.00 for the visit. The Jail responded that $5.00 is the charge for a sick call, regardless of whether the patient agreed with or was satisfied with the treatment.

Redd filed an additional grievance on March 12, 2007, claiming that the jail denied him medical assistance for dizzy spells and headaches. Redd indicated in the grievance that he would like to be taken to the emergency room in order to deal with his ailments because he is unable to

---

[1] Dr. Berdeen's affidavit explicitly denies discontinuing the medication and there is no clear evidence in the record as to who discontinued the K-Flex or why it was discontinued.

3

afford an Ear, Nose, and Throat doctor. The Jail responded by detailing Redd's visits to Dr. Berdeen and his opinion that Redd's condition did not necessitate an emergency room visit.

## II.

In support of their motion for summary judgment, defendants attached affidavits from Dr. Berdeen and Trump, Redd's inmate progress notes, Redd's physician's orders, and the Jail's Inmate Handbook.

Dr. Berdeen's affidavit establishes that he examined Redd on January 23, 2007 for complaints of headaches, burning in both ears, blurry vision, and a cyst under his upper lip. According to the affidavit, Dr. Berdeen conducted a physical and neurological examination of Redd, both of which were normal. After inspecting Redd's lip, Dr. Berdeen did not observe any cyst or mass. Dr. Berdeen diagnosed Redd as suffering from chronic headaches of an unknown origin.

Dr. Berdeen's affidavit further establishes that he saw Redd again on March 2, 2007. Redd again complained of a cyst inside his upper lip and frequent headaches. Redd complained that the cyst opens occasionally and expresses fluid. Dr. Berdeen observed no visible cyst during this visit. Dr. Berdeen conducted another physical and neurological examination of Redd and concluded that both were normal. Dr. Berdeen diagnosed Redd as having chronic headaches and a mucocoel.[2] Dr. Berdeen did suggest that Redd visit an Ear, Nose, and Throat doctor once transferred to prison, but did not indicate that the mucocoel required surgery or that it was possibly life threatening.

---

[2] A mucocoel or mucocele is a "dilatation of a cavity with accumulated mucous secretion," a "mucus retention cyst," or a "mucus extravasation phenomenon." Dorland's Illustrated Medical Dictionary 1178 (30th Ed. 2003).

4

On May 29, 2007, Dr. Berdeen examined Redd who complained of headaches. During this visit, Redd did not complain about the cyst or mucocoel. Dr. Berdeen again conducted physical and neurological examinations and again concluded that both were normal. Dr. Berdeen diagnosed Redd as suffering from chronic headaches for the third time.

Trump's affidavit establishes that she examined Redd on February 27, 2007. During which, Redd complained of an infected tooth and Trump observed what appeared to be a pocket of infection above his front tooth. Trump states that she consulted with Dr. Berdeen and obtained a prescription from Dr. Berdeen for K-Flex to treat the infection. Trump also spoke with Redd on May 22, 2007, during which time he did not complain of a cyst in his mouth.

On May 23, 2007, Trump saw Redd for complaints of ear pressure, congestion, and a cyst in his mouth. Trump states that she did not observe a cyst in Redd's mouth at this time. Trump also advised Redd that he could see an Ear, Nose, and Throat specialist if he was not satisfied with the treatment at the Jail, but that such a visit would be at his own expense.[3] Redd was seen by medical staff at the Jail each time he requested such a visit.

### III.

Upon motion for summary judgment, the court must view the facts and the inferences to be drawn from those facts in the light most favorable to the party opposing the motion. Ross v. Communications Satellite Corp., 759 F.2d 355 (4th Cir. 1985). However, the court need not treat the complaint's legal conclusions as true. See, e.g., Custer v. Sweeney, 89 F.3d 1156, 1163 (4th

---

[3] The Jail's Inmate Handbook explicitly states, "If you are not satisfied with the treatment by the Jail Physician then you may contact a physician of your choice. . . . It must be understood by both the doctor and the inmate that the inmate is responsible for the total cost of the medical bill and treatment." Def.'s Ex. C, 11.

Cir. 1996) (court need not accept plaintiff's "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations") (internal quotations and citations omitted); Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217-18 (4th Cir. 1994). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the adverse party may not rest on mere allegations or denials of the adverse party's pleadings. Fed. R. Civ. P. 56(e). Instead, the adverse party must respond by affidavits or otherwise and present specific facts showing that there is a genuine issue of disputed fact for trial. Id. A prisoner proceeding pro se in an action filed under § 1983, however, may rely on the detailed factual allegations in his verified pleadings to withstand a motion for summary judgment supported by affidavits containing a conflicting version of the facts. Davis v. Zahradnick, 600 F.2d 458, 460 (4th Cir. 1979). If the adverse party fails to show a genuine issue of material fact, summary judgment, if appropriate, may be entered against the adverse party.

To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that such

6

deprivation is the result of conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988).

In order to state a constitutionally cognizable claim for denial of adequate medical treatment in contravention of the Eighth Amendment's prohibition of cruel and unusual punishment, a plaintiff must allege facts sufficient to demonstrate that defendants were deliberately indifferent to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976); Erickson v. Pardus, 127 S. Ct. 2197, 2198 (2007); Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997). To establish deliberate indifference a plaintiff must show that the defendants knew of and disregarded an excessive risk to the plaintiff's health. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). A serious medical need is one that rises to the level of a constitutional claim and places the inmate at a substantial risk of serious harm. Farmer, 511 U.S. at 834; De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003).

Mere allegations of malpractice or negligence, however, do not give rise to a constitutional claim simply because a prisoner is involved. Estelle, 429 U.S. at 103; Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Similarly, disagreements between an inmate and a doctor over a diagnosis or course of treatment do not rise to the level of a constitutional claim. Wright, 766 F.2d at 849. Furthermore, "questions of medical judgment are not subject to judicial review." Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975).

Redd has failed to establish that defendants were deliberately indifferent to a serious medical need. The medical staff at the jail saw Redd on numerous occasions from January 10, 2007 through May 29, 2007. Dr. Berdeen, by his affidavit, saw and treated Redd on three occasions and at least twice by Redd's own account. Furthermore, Sergeant Trump saw Redd on

7

three occasions during this time and Redd has acknowledged at least two of these visits. Both Sergeant Trump and Dr. Berdeen instructed Redd, in accordance with the Jail's Inmate Handbook, that he had the opportunity to visit an Ear, Nose, and Throat doctor if he was unsatisfied with his treatment.

Redd received medical attention each time he asked for it and his claim rests upon dissatisfaction with his course of treatment. Wright, 766 F.2d at 849. As such, the defendants were not deliberately indifferent to a serious medical need, as required for a claimant to be successful under the Eighth Amendment. Additionally, Redd's dissatisfaction with Dr. Berdeen's diagnosis is not judicially reviewable as it is a question of medical judgment. Russell, 528 F.2d at 319. Even in the light most favorable to Redd, his allegations would rise to the level of a dispute over the course of treatment, which is insufficient to succeed on a constitutional claim. Wright, 766 F.2d at 849.[4]

## V.

For the reasons stated above, the court finds that Redd has failed to present any issue of material fact and that defendants are entitled to judgment as a matter of law as to all claims raised in the complaint. Accordingly, defendants' motion for summary judgment will be granted.

---

[4]In addition, Redd's claim also fails because he has failed to demonstrate a serious medical need that rises to the level of a constitutionally cognizable claim. As discussed above, a claimant must establish not only deliberate indifference on the part of the defendants, but also that indifference must be to a serious medical need. Farmer, 511 U.S. at 834, De'Lonta, 330 F.3d at 634. A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. See Farmer, 511 U.S. at 832-35; Sosebee v. Murphy, 797 F.2d 179, 182-83 (4th Cir. 1986); Loe v. Armistead, 582 F.2d 1291, 1296-97 (4th Cir. 1978). Not only has Redd been repeatedly seen for his medical complaints, his claimed maladies fall far short of this standard.

The Clerk is directed to send copies of this Memorandum Opinion and accompanying Order to plaintiff and to counsel of record for the defendants.

Entered this 14th day of September, 2007.

/s/ Michael F. Urbanski
Michael F. Urbanski
United States Magistrate Judge